# UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF OKLAHOMA

FILED
MAR 4 2013
ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

United States of America )
v. ) Case No: M-13-93-P
John Robert Harvey )

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT 1

On or about February 17, 2013, in the county of Kay, in the Western District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Knowingly possessed an unregistered machinegun, that is an AK 47 type rifle, bearing serial number 440556. |

This criminal complaint is based on these facts:

See attached Affidavit of Task Force Officer Pablo Pinzon, Bureau of Alcohol, Tobacco, Firearms and Explosives, which is incorporated and made a part hereof by reference.

X Continued on the attached sheet.

_____
Complainant's signature
PABLO PINZON
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and signed in my presence.

Date: 3/4/13

_____
Judge's signature

City and State: Oklahoma City, Oklahoma

GARY M. PURCELL, U.S. Magistrate Judge
Printed name and title

**STATE OF OKLAHOMA** )
) SS.
**COUNTY OF KAY** )

### AFFIDAVIT OF TASK FORCE OFFICER PABLO PINZON
### BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES

I, Pablo A. Pinzon, being duly sworn deposes and says:

1.   Your affiant, TFO Pablo Pinzon, has been employed with the State of Oklahoma for approximately eight years. Currently your affiant is assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives as a Task Force Officer. As a Task Force officer with ATF, I am vested with the authority to investigate violations of Federal laws, including Titles 18, 21, and Title 26 of the United States Code. Your affiant conducts illegal drug investigations, as well investigations on individuals who traffic in and sell weapons and illegal weapons. Your affiant assists in illegal drug investigations and assists other Federal Agents and local Officers throughout the state and country in numerous types of investigations. Your affiant also coordinates and assists in the execution of arrest warrants as well as search warrants in an effort to uncover narcotic related crimes, and various other felony offenses.

2.   Your affiant has received formal training and instruction in the detection, recognition and uses of several different types of illegal narcotics from the Oklahoma Bureau of Narcotics and Dangerous Drugs, the Drug Enforcement Administration and the Oklahoma State Bureau of Investigation as well as several other law enforcement agencies throughout the United States. Your affiant has assisted in numerous investigations involving city, state, and federal prosecutions, which have resulted in apprehension of persons on narcotic related charges as well as the seizure of drugs, property and monies. Your affiant has had conversations with and been in the company of other experienced local, state, and federal law enforcement officers as well as prosecuting attorneys representing both state and federal systems concerning narcotics and dangerous drug trafficking activities and criminal violations. Also your affiant has worked in the company of other experienced law enforcement officers and has discussed their investigative techniques and experiences with them. In the course of the investigations, which your affiant has been party to, your affiant has become

1

familiar with clandestine business practices of drug traffickers and illicit drug traffickers.

3.  This affidavit is submitted in support of an Application for a Search Warrant to search the residence located at **2102 Elmwood Drive, Blackwell, Oklahoma 74631**. I submit that probable cause exists to believe that: 1) evidence of a crime, 2) contraband, or 3) fruits of a crime are to be located in said location relating to violations of Title 18, United States Code, Section 922(o).

Based upon my training and experience, and participation in other investigations involving drug crimes and other felony crimes, I know the following:

4.  Your Affiant was contacted by Chief LeValley of the Blackwell Police Department. Chief LeValley advised that Officer Bobby Kehn of the Blackwell Police Department can testify to the following: On February 26, 2013, at 18:29 Officer Kehn was contacted by Troy AEBIESCHER of the Blackwell Fire Department. Officer Kehn knows AEBIESCHER on a professional level regarding their work for the city of Blackwell. Your Affiant knows that AEBIESCHER has a current federal firearm license to sell firearms. AEBIESCHER advised Officer Kehn that he had a Russian AK 47 he would like to get rid of. AEBIESCHER knew that Officer Kehn had recently been looking to buy one. AEBIESCHER also advised Officer Kehn that he did not know if he (Officer Kehn) would want to get involved. AEBIESCHER explained that he had bought it from John HARVEY, who is a patrolman also with the city of Blackwell. AEBIESCHER also explained that the weapon was full auto (fully automatic). AEBIESCHER explained that John HARVEY had advised AEBIESCHER that he (HARVEY) had brought it back with him from Afghanistan while he was deployed.

5.  Officer Kehn contacted Lt. Jay Brewer because of the conversation that Officer Kehn had with AEBIESCHER. Officer Kehn told Lt. Brewer that he did not know how to tell if the weapon was full auto or not. Lt Brewer showed Officer Kehn an AK 47 that they had in evidence and made sure that Officer Kehn was confident on the workings of the weapon.

6.  At 17:35 Officer Kehn again made contact with AEBIESCHER by telephone and advised him (AEBIESCHER) that he (Officer Kehn) thought he had a potential buyer. Officer Kehn also advised AEBIESCHER that he would

like to look at the weapon. AEBIESCHER advised that it would be no problem and that Officer Kehn should stop by because AEBIESCHER was at home.

7. At 17:42 while on duty as a patrolman for the city of Blackwell Officer Kehn made contact with AEBIESCHER at his residence at 2102 Elmwood Drive, in Blackwell, Oklahoma. AEBIESCHER asked Officer Kehn into his residence. As Officer Kehn entered the residence, AEBIESCHER proceeded down a hallway on the right. AEBIESCHER turned into the first bedroom on the right and retrieved a gun case from a pile of several cases which were stacked in the corner. When AEBIESCHER produced the weapon Officer Kehn observed that the butt stock had been chopped off. Officer Kehn also observed that the weapon had a tactical sling mounted to it. Officer Kehn observed that the bluing on the weapon had been worn off as if it was very heavily used.

8. AEBIESCHER explained that it was the real deal and explained to Officer Kehn that the gun had some burned up o rings in it but AEBIESCHER had replaced them all. AEBIESCHER explained the different markings on the gun and how you could tell that it was a Russian made rifle. AEBIESCHER also explained the different markings on the selector switch and what they meant. AEBIESCHER explained to Officer Kehn how to switch it from select fire to full auto and again remarked that it was the real deal. Officer Kehn asked AEBIESCHER if he had fired it and AEBIESCHER stated that he had not gotten a chance yet. Officer Kehn advised AEBIESCHER that he had a brother that was interested in the gun and that he (Office Kehn) wanted a picture of it. AEBIESCHER advised Officer Kehn that he trusted him but he (AEBIESCHER) would rather people not know where the gun came from because AEBIESCHER had a lot more riding on it than just a sale. Officer Kehn asked if he could take a picture of the weapon with his phone and AEBIESCHER agreed. As Officer Kehn took a picture of the weapon he explained to AEBIESCHER that it was for his brother and that he just wanted to see it.

9. Officer Kehn contacted Chief Fred LeValley and advised him of what had happened. Chief advised Officer Kehn that he wanted him to ask AEBIESCHER if he (Officer Kehn) could shoot it to confirm that it was full auto. After making contact with AEBIESCHER, Officer Kehn advised AEBIESCHER that he would like to shoot it before it disappears because he had not shot one before. AEBIESCHER advised Officer Kehn that it would be no problem and that he

3

should come now and they could run out and shoot it just north of town. Officer Kehn advised AEBIESCHER that he would like to wait until his shift ended at 22:45 before going and AEBIESCHER agreed.

10. At 22:59 while still in Officer Kehn's patrol car as ordered by Chief LeValley, Officer Kehn made contact with AEBIESCHER at his residence at 2102 Elmwood Drive, Blackwell, Oklahoma. AEBIESCHER brought two weapons with him -- the AK47 and a Seiga 12 gauge -- because Officer Kehn had talked to AEBIESCHER in the past about finding a Seiga to buy. Officer Kehn advised AEBIESCHER that they could go out just off of 44th street in Kay County to shoot the guns. After pulling up under the overpass, Officer Kehn turned off his headlights and exited his patrol car. AEBIESCHER retrieved the AK47 from Officer Kehn's patrol car back seat and put a magazine into it. After shooting a few rounds, AEBIESCHER emptied the magazine. After retrieving an additional clip from AEBIESCHER's bag, he reloaded the weapon for him (Officer Kehn) and handed it to him. After loading the weapon, Officer Kehn pointed it down range and squeezed the trigger, emptying the full magazine. After a short conversation, AEBIESCHER retrieved the Seiga 12 and began attempting to shoot it. AEBIESCHER explained that he had just built the Seiga 12 and added a new gas system and it needed adjusted. After several adjustments, it began working properly. After shooting a few more rounds, he handed it to Officer Kehn and he finished it off. AEBIESCHER reloaded the weapon and Officer Kehn emptied an additional magazine. After returning AEBIESCHER to his residence, Officer Kehn again contacted Chief LeValley and advised him of his findings. Chief LeValley advised Officer Kehn to tell AEBIESCHER that he (Officer Kehn) would buy the weapon and that they could do it at approximately 09:00 on February 28, 2013.

11. On February 28, 2013 at approximately 08:30 Officer Kehn was contacted by Chief LeValley and advised to attempt to put off the purchase because he was still trying to get into contact with the ATF.

12. At 09:30 Officer Kehn again made contact with Chief LeValley. While in his office, Chief LeValley advised Officer Kehn to make the deal and had Officer Kehn sign for the money. Chief LeValley advised that he had spoken to ATF and they said to go ahead and purchase the machinegun.

4

The following U.S. currency was used to purchase the machinegun:
  a) Seventeen (17) $100.00 bills, containing the following serial numbers:
     HJ43043198A, HL19560853E, HH59239317A, HB70093316K,
     HC37066536A, FE03406412A, KE19604704B, DC22865656A,
     HJ89431537A, HD05362901B, AB30974495H, CF08835472A,
     DF08200591A, DI11592037A, FB57949935C, HK81265275B,
     AF21798870C.

  b) Six (6) $50.00 bills, containing the following serial numbers:
     JK13445641A, JL13434458A, IK12389173A, JK15177642A
     EG05628070B, EF15508586A.

13.  At 09:54 while en-route to AEBIESCHER's residence, Officer Kehn called and advised AEBIESCHER that he would be in a hurry because he was going to get his patrol car worked on. Officer Kehn advised AEBIESCHER that he would have to just pay AEBIESCHER, grab the gun and go. AEBIESCHER said that would be fine.

14.  At 09:58 Officer Kehn made contact with AEBIESCHER at his residence at 2102 Elmwood Drive, Blackwell, Oklahoma. When AEBIESCHER answered the door, Officer Kehn again advised AEBIESCHER that he was in a hurry as he handed AEBIESCHER the cash (See: Paragraph 12). AEBIESCHER retrieved a gun case that was lying on the couch just inside the door and handed it to Officer Kehn. AEBIESCHER advised Officer Kehn that he would let him take the case but asked for it back later. When Officer Kehn left AEBIESCHER's residence, Officer Kehn drove back to the police department and turned over the weapon to Chief LeValley. The weapon was photographed with Officer Kehn's camera and was identified by serial #440556 and was stamped 1974.

15.  On February 28, 2013, at approximately 12:30 pm, your Affiant met with Blackwell Police Chief Fred LeValley who provided your Affiant with an AK 47 type firearm. The firearm is missing the stock as it appears to have been sawed off. The green sling is attached to the firearm so that the firearm can be shoulder-carried. Your Affiant conducted a field test on the firearm. Based upon the results of the field test, your Affiant believes, through his training and experience, that the firearm is fully automatic. This firearm fires 7.62ammunition. The firearm does appear to have a manufactured marking for a Russian

manufactured rifle and does have the date 1974 stamped on the side, bearing serial number 440556 (see Exhibit 1). Your Affiant was able to listen to audio/video recordings provided by the Blackwell Police Department. Detailing the transaction between Officer Kehn and AEBIESCHER on February 27, 2013, and February 28, 2013. While watching the video, Your Affiant observed AEBIESCHER firing the AK-47 style rifle with fully loaded magazines containing approximately 30 rounds each. The rifle was sold to Officer Kehn without a magazine for the rifle. Thus Your Affiant believes that magazines and/or ammunition are still located at the residence of AEBIESCHER and at HARVEY's residence. After listening to the recording Your Affiant observed AEBIESCHER stating the following:

1. That AEBIESCHER was wanting to keep the transaction "off the record"
2. That AEBIESCHER had received the firearm from an individual that had illegally acquired the firearm, identified as John HARVEY
3. That AEBIESCHER was aware that the rifle was fully automatic and that AEBIESCHER was familiar with all the workings of the firearms.
4. That after the transaction, Kehn was to keep the transaction quiet because AEBIESCHER had "a lot more than just this deal ridding on the line."

16.  Your Affiant also interviewed other officers from the Blackwell Police Department who all advised that they have had conversations with and or about Officer John HARVEY concerning an automatic rifle, which he advised that he brought back from overseas.  Officers from the Blackwell Police Department advised that during different occasions within the last six months, HARVEY stated he had been illegally in possession of a fully automatic rifle.

17.  Your Affiant received information from ATF Industrial Operations Investigators that provided Your Affiant a copy of the Federal Firearms License (FFL) #5-73-01-04147. This license is a home based business owned and operated by AEBIESCHER located at 2102 Elmwood Drive, Blackwell, Oklahoma to both purchase sell firearms. This is the same residence/business where Blackwell Police Officer Kehn purchased an AK-47 type rifle having serial number 440556. On February 28, 2013, Your Affiant drove by this residence and observed a white Chevy Pick-up Truck bearing Oklahoma license plate FF6-452, which is registered to AEBIESCHER.

18. An inquiry with the ATF National Firearms Act Registration and Transfer Record revealed that the AK 47 type rifle bearing serial number 440556 was not registered to either AEBIESCHER or John HARVEY.

19. HARVEY was contacted by the Police Chief of the Blackwell Police Department and advised to come into the station. Upon arrival to the Police Department, contact was made with HARVEY by ATF Agents. HAYRVEY was taken into an interview room and advised the reason for being called in.

20. HARVEY was advised of his rights under Miranda. HARVEY advised that he understood his rights, signed a Rights Waiver and agreed to speak with Agents. Agents inquired about the machine gun that had been sold by AEBISCHER. HARVEY advised that he was aware of the machine gun and knew that it was illegal. HARVEY advised that he sold the machine gun to AEBISCHER for a XD45 pistol and $500.00 dollars in U.S. Currency. On or about February 17, 2013, HARVEY sold the machinegun, the AK 47, in Blackwell, Oklahoma to AEBISCHER.

21. HARVEY advised that he was in the Military and had returned from the Middle East approximately eight months ago. HARVEY advised that while he was in the Middle East he had acquired the machine gun from the interpreter who had been assigned to his unit. HARVEY advised that he and the interpreter had gone off base on one occasion and fired off the machine gun. HARVEY advised that he made the comment to the interpreter that he thought the machine gun was really cool and that he would love to have one. The interpreter in turn gave the machine gun to HARVEY as a gift.

22. HARVEY advised that he was assigned to a supplies unit in the Military and knew how to "bring the machine gun back" without it being detected. HARVEY was able to transport the machine gun back to the states without incident.

23. Based upon the aforementioned facts and circumstances, your affiant believes that probable cause exists that in the Western Judicial District of Oklahoma, **JOHN HARVEY** knowingly possessed an unregistered machine gun in violation of Title 18, United States Code, Section 922 (o).

FURTHER THE AFFIANT SAITH NOT.

*[signature]*

PABLO PINZON
TASK FORCE OFFICER
**Bureau of Alcohol, Tobacco, Firearms and Explosives**

Subscribed and sworn to me before this ___4th___ day of March 2013.

*[signature]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE